**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| AMADORA SYSTEMS LLC | § § § | |
| v. | § | CASE NO. 2:24-cv-0612-JRG |
| | § | (Lead Case) |
| AUSTIN BANCORP, INC. | § | |
| AMADORA SYSTEMS LLC | § § | |
| v. | § | CASE NO. 2:24-cv-0614-JRG |
| BANK OF TEXAS, a Division of BOKF, N.A., | § § | (Member Case) |
| AMADORA SYSTEMS LLC | § § | |
| v. | § | CASE NO. 2:24-cv-0619-JRG |
| TEXAS BANK & TRUST COMPANY | § § | (Member Case) |
| AMADORA SYSTEMS LLC | § § | |
| v. | § | CASE NO. 2:24-cv-0622-JRG |
| VERABANK, N.A., | § § | (Member Case) |

**DEFENDANTS BANK OF TEXAS, A DIVISION OF BOKF, N.A.'S, TEXAS BANK & TRUST COMPANY'S, AND VERABANK, N.A.'S MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(C) FOR LACK OF PATENT ELIGIBILITY**

# TABLE OF CONTENTS

I.      STATEMENT OF THE ISSUES................................................................................1

II.     SUMMARY OF THE ARGUMENT ........................................................................1

III.    NATURE AND STATE OF THE PROCEEDINGS...................................................2

IV.     THE ASSERTED PATENTS ARE INVALID UNDER 35 U.S.C. § 101........................3

        A.      Legal Standard for Judgment on the Pleadings Under Rule 12(c)..........................3

        B.      Procedural Standards ...........................................................................5

                1.      Claim Construction is Not a Prerequisite for Finding Patents Invalid Under §
                        101........................................................................................6

                2.      Representative Claims of the Asserted Patents May Be Analyzed Under §
                        101........................................................................................8

        C.      *Alice* Step One:  The Asserted Patents Claim an Abstract Idea and Provide
                Nothing More.....................................................................................9

                1.      The Asserted Patents claim the abstract idea of "generating, processing, and
                        transmitting information" for monitoring and surveilling financial
                        transactions. ..........................................................................9

                2.      The abstract idea of the Asserted Patents is nothing more than application of
                        the same steps used by a bank teller to surveil financial transactions. ............15

                3.      The claims of the Asserted Patents contain only results-driven functional
                        language that recite the steps for implementing the abstract idea. ..................17

                4.      The claims recite their abstract idea using only functional language and
                        therefore provide no improvement to the specific means or technology.........18

                5.      The specification only describes generic computers used in conventional ways
                        and thus does not cure the claims' abstract nature..........................................19

        D.      *Alice* Step Two:  The Asserted Patents Do Not Recite Any Inventive
                Concept. .........................................................................................21

                1.      The abstract idea claimed by the Asserted Patents does not provide any
                        inventive concept. ...................................................................21

                2.      The claimed abstract idea utilizes only conventional equipment in
                        conventional ways...................................................................22

                3.      There is nothing "inventive" in how the claims' functional steps are
                        ordered…. ..........................................................................23

i

V.     CONCLUSION...............................................................................................................24

# TABLE OF AUTHORITIES

## Cases

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
    838 F.3d 1266 (Fed. Cir. 2016) ................................................................. 4, 17, 18

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
    97 F.4th 1371 (Fed. Cir. 2024) ..................................................................... 11, 19

*Alice Corp. Pty. v. CLS Bank Int'l.*
    573 U.S. 208 (2014) ........................................................................................ passim

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
    841 F.3d 1288 (Fed. Cir. 2016) ............................................................................ 6

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
    687 F.3d 1266 (Fed. Cir. 2012) ..................................................................... 6, 23

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016) ..................................................................... 6, 23

*Becton, Dickinson & Co. v. Baxter Int'l, Inc.*,
    No. 1–14–CV–222–LY, 2015 WL 5148850 (W.D. Tex. Aug. 3, 2015) ................................ 19

*Calvillo v. Convergent Healthcare Recoveries, Inc.*,
    No. CV SA-14-CA-286-FB, 2014 WL 12874064 (W.D. Tex. July 22, 2014) .......................... 4

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019) ....................................................................... 7, 21

*CLS Bank, Int'l v. Alice Corp.*,
    717 F.3d 1269 (Fed. Cir. 2013) .......................................................................... 23

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014) .................................................................... 6, 7, 8

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) .......................................................................... 16

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ...................................................................... passim

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) .......................................................................... 18

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
    955 F.3d 1317 (Fed. Cir. 2020) ..................................................................... 18, 22

*Esignature Software, LLC v. Adobe Inc.*,
    No. 2023-1711 (Fed. Cir. July 3, 2024) .................................................................. 19

*Fort Properties, Inc. v. Am. Master Lease LLC*,
    671 F.3d 1317 (Fed. Cir. 2012) ................................................................... 4, 5

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
    313 F.3d 305 (5th Cir. 2002) ....................................................................... 4

*Guidry v. Am. Pub. Life Ins. Co.*,
    512 F.3d 177 (5th Cir. 2007) ....................................................................... 4

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
    60 F.4th 1349 (Fed. Cir. 2023) ...................................................... 10, 14, 23

*Hebert Abstract Co. v. Touchstone Props., Ltd.*,
    914 F.2d 74 (5th Cir. 1990) ......................................................................... 4

*Horen v. Bd. of Educ. of Toledo City Sch. Dist.*,
    594 F. Supp. 2d 833 (N.D. Ohio 2009)........................................................ 4

*Hughes v. Tobacco Inst., Inc.*,
    278 F.3d 417 (5th Cir. 2001) ....................................................................... 5

*iLife Techs., Inc. v. Nintendo of Am., Inc.*,
    839 F. App'x 534 (Fed. Cir. 2021) ............................................................ 10

*In re Bd. of Trustees of Leland Stanford Junior Univ.*,
    989 F.3d 1367 (Fed. Cir. 2021) ................................................................ 23

*In re Bilski*,
    545 F.3d 943 (Fed. Cir. 2008) .................................................................... 5

*In re Killian*,
    45 F.4th 1373 (Fed. Cir. 2022) ................................................................ 11

*In re TLI Commc'ns LLC Pat. Litig.*,
    823 F.3d 607 (Fed. Cir. 2016) .................................................................. 20

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015) .......................................................... 10, 14

*Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*,
    76 F.Supp.3d 513 (D. Del. 2014), *aff'd*, 803 F.3d 667 (Fed. Cir. 2015) .......................... passim

*Joao Control & Monitoring Sys., LLC v. Telular Corp.*,
    173 F. Supp. 3d 717 (N.D. Ill. 2016).................................................... 16, 19

*Joao Control & Monitoring Systems v. Digital Playground, Inc.*
    No. 12-CV-6781, 2016 WL 5793745 (S.D.N.Y. Sept. 30, 2016) ...................................... 14, 16

*MacFadden v. GMAC Mortg., LLC*,
    No. 2:13-CV-91, 2013 WL 2422579 (S.D. Tex. June 3, 2013)................................... 4

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*,
    566 U.S. 66 (2012) ................................................................................... 6, 9, 11, 21

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016) ................................................................................ 18

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015) .................................................................................. 5

*Polaris Innovations Ltd. v. Nanya Tech. Corp.*,
    No. 2:23-CV-00044-JRG, 2024 WL 1020562 (E.D. Tex. Mar. 8, 2024) ............................ 4, 5

*PPS Data, LLC v. Jack Henry & Assocs., Inc.*,
    404 F. Supp. 3d 1021 (E.D. Tex. 2019) ....................................................................... 8

*Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols.*,
    No. 2:15-CV-1559-WCB, 2016 WL 2742379 (E.D. Tex. May 10, 2016) ............................. 6

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) ............................................................................. 5, 18

*St. Paul Mercury Ins. Co. v. Williamson*,
    224 F.3d 425 (5th Cir. 2000) ..................................................................................... 5

*Symbology Innovations, LLC v. Dexcom, Inc.*,
    No. 2:23-CV-00473-JRG, 2024 WL 3543409 (E.D. Tex. July 25, 2024) ......................... 5, 6, 8

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) ........................................................................... 14, 23

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) .................................................................................... 5

*Univ. of Fla. Research Found., Inc. v. General Electric, Co.*,
    916 F.3d 1363 (Fed. Cir. 2019) ................................................................................ 19

*Voest–Alpine Trading USA Corp. v. Bank of China*,
    142 F.3d 887 (5th Cir. 1998) ..................................................................................... 4

*Wireless Media Innovations, LLC v. Maher Terminals, LLC*,
    100 F. Supp. 3d 405 (D.N.J. 2015), *aff'd*, 636 Fed. Appx. 1014 (Fed. Cir. 2016) .................... 7

**Statutes**

35 U.S.C. § 101 ......................................................................................... 1, 4, 5, 24

**Rules**

Fed. R. Civ. P. 1 .......................................................................................................... 4

Fed. R. Civ. P. 12(c) .............................................................................................. 1, 4, 24

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| A | U.S. Patent No. 9,245,270 ("the '270 patent") |
| B | U.S. Patent No. 10,861,020 ("the '020 patent") |
| C | U.S. Patent No. 11,922,429 ("the '429 patent") |

Defendants Bank of Texas ("BOKF"), Texas Bank & Trust Company ("TB&T"), and VeraBank, N.A. ("VeraBank") (collectively "Defendants") move this Court for a judgment on the pleadings and a dismissal with prejudice of Plaintiff Amadora Systems, LLC's ("Amadora") Complaint (Dkt. 1) pursuant to Federal Rule of Civil Procedure 12(c).  Amadora's Complaint claims infringement of U.S. Patent Nos. 9,245,270 ("the '270 patent"), 10,861,020 ("the '020 patent"), and 11,922,429 ("the '429 patent") (collectively the "Asserted Patents").  The Asserted Patents are invalid under 35 U.S.C. § 101 because they are directed to patent ineligible subject matter.  Accordingly, a judgement on the pleadings should be entered in Defendants' favor and Amadora's claims of infringement should be dismissed with prejudice.

## I.    STATEMENT OF THE ISSUES

Whether the Asserted Patents claim patent ineligible subject matter and therefore are invalid under 35 U.S.C. § 101 and *Alice Corp. Pty. v. CLS Bank Int'l.*  573 U.S. 208 (2014) .

## II.    SUMMARY OF THE ARGUMENT

A judgment on the pleadings should be entered in Defendants' favor and the Complaint should be dismissed with prejudice because the claims of the Asserted Patents are invalid under 35 U.S.C. § 101  because they are each directed to patent-ineligible subject matter.  Analyzing the Asserted Patents using the Supreme Court's *Alice* two-part test, the claims of the patents are patent ineligible because they: 1) are directed to the well-established abstract idea of gathering, processing, and transmitting information for the purpose of monitoring and surveilling financial transactions; and 2) do not provide an "inventive step" needed to preclude a finding of invalidity under § 101, as they fail to contain any "additional features" beyond the use of generic computer equipment to complete the longstanding task of authenticating a financial transaction.

The Asserted Patents each claim an apparatus and methods to monitor and ensure the authenticity of financial transactions by collecting and processing user data and notifying account

holders of potential fraud.  Such claims recite the abstract idea of gathering, processing, and transmitting information, which has been routinely held as patent ineligible by the Federal Circuit and this District.  Application of this well-established abstract idea for the purpose of monitoring and surveilling financial transactions does not make it any less abstract.  In fact, comparison of the claims of the Asserted Patents to those of the same inventor in a previous case (which were also found patent ineligible) demonstrates that the gathering, processing, and transmitting steps of the claims mimic the same functions traditionally carried out by a bank teller.  Nothing exists in the claims or the accompanying specification—such as an improvement to the technology—to save them from abstraction and patent ineligibility under *Alice* step one.

Since the claims' gathering, processing, and transmitting steps are ordered in the same conventional fashion that would be conducted by a bank teller, and are implemented using only generic computer equipment, they lack any "inventive concept" and are patent ineligible under *Alice* step two.  Put simply, the claims recite an age-old process conducted by a bank teller applied to electronic components and computers; there is nothing in the claims about *how* the application of this process is unique or inventive, thus the claims of the Asserted Patents are invalid under § 101 because they are directed to patent ineligible subject matter.

## III.    NATURE AND STATE OF THE PROCEEDINGS

The Asserted Patents are comprised of three patents (the '270 patent, the '020 patent, and the '429 patent) and are each entitled as a "Transaction security apparatus and method."  *See* Exs. A–C.  Specifically, the patents claim "an apparatus and a method for providing financial transaction authorization, notification and/or security."  *See* Ex. A at 3:65-67.  Each of the three patents are in the same family.  The earliest filed '270 patent purports to claim priority back to a provisional application (No. 60/701,770) filed in 2005, while the '020 and '429 patents purport to claim back to at least the filing of Application No. 12/925,057 on February 4, 2010.  *See* Exs. A–

C.  Each of the Asserted Patents share the same inventor, Raymond Anthony Joao, and contain similar specifications.[1]

The patents describe "an apparatus and a method for providing financial transaction authorization, notification and/or security." *See* Ex. A at 3:65–67.  The apparatus and method are further "utilized so as to provide authorization, notification and/or security in banking and related financial transactions involving checking accounts, savings accounts and/or automated teller machine (ATM) transactions." *Id*. at 9:51–57.  The claims of the Asserted Patents each describe the same essential process.  First, a "camera/microphone system" and/or a "video recording device" is used to capture "a picture, a photograph, or a video clip of an individual or individuals involved in a transaction." *Id*. at 16:15–20.  Additionally, an "input device" such as "a keypad and/or any other suitable input device for inputting data into the central processing computer" is used to obtain account information related to the transaction. *Id*. at 16:49–53.  A computer within the transaction terminal then processes both the images and video and the banking account information and can store the data and information. *Id*. at 16:35–53.  Finally, the transactional terminal transmits or displays the previously captured and stored information, including transmitting the information to the account holder. *Id*. at 16:54–17:3, 30:23–63.

## IV.    THE ASSERTED PATENTS ARE INVALID UNDER 35 U.S.C. § 101

### A.    Legal Standard for Judgment on the Pleadings Under Rule 12(c)

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P.

---

[1] The '020 and '429 patents share the same specification.  The differences between the '270 patent specification and the specification shared by the '020 and '429 patents are insubstantial for the purposes of the present motion.  For the sake of clarity, the present Motion cites to the '270 patent specification as it is the earliest-filed patent.

12(c).[2]  A Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)).  "In ruling on a motion under Rule 12(c), the Court may consider the pleadings themselves, and any exhibits thereto or matters incorporated by reference therein, as long as all the material allegations of fact are undisputed and only questions of law remain to be decided by the court."  *See Polaris Innovations Ltd. v. Nanya Tech. Corp.*, No. 2:23-CV-00044-JRG, 2024 WL 1020562, at *1 (E.D. Tex. Mar. 8, 2024) (citing *Voest–Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 n.4 (5th Cir. 1998)).

In the context of a challenge under Rule 12(c) to a patent's validity under 35 U.S.C. § 101, the Court may properly take note of "fundamental economic concepts and technological developments." *Id.* (citing *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1270 (Fed. Cir. 2016)).  The standard for determining a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss.  *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).  Thus, the ultimate question for the court in deciding a Rule 12(c) motion is whether, viewed in the light most

---

[2] Potential amendment of the complaint by Plaintiff in response to Defendants' pending Rule 12(b)(6) motions to dismiss will have no material impact on the validity of the asserted claims under § 101, which is a question of law. *See Fort Properties, Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1320 (Fed. Cir. 2012).  The issue of patent eligibility under § 101 is therefore ripe for adjudication and presented consistent with the goals of the Federal Rules of Civil Procedure, such that the Rules "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. To the extent procedurally required, Defendants request the Court convert the current Rule 12(c) motion to a Rule 12(b)(6), as the standard of review for the two motions are the same and Plaintiff faces no prejudice by such conversion.  *See Calvillo v. Convergent Healthcare Recoveries, Inc.*, No. CV SA-14-CA-286-FB, 2014 WL 12874064, at *5-6 (W.D. Tex. July 22, 2014) (collecting cases at n. 62); *MacFadden v. GMAC Mortg., LLC*, No. 2:13-CV-91, 2013 WL 2422579, at *2 (S.D. Tex. June 3, 2013); *Horen v. Bd. of Educ. of Toledo City Sch. Dist.*, 594 F. Supp. 2d 833, 840-41 (N.D. Ohio 2009).

favorable to the plaintiff, the complaint states a valid claim for relief. *Polaris*, 2024 WL 1020562, at *1 (citing *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001); *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000)).

### B.    Procedural Standards

Determination of patent eligible subject matter in patent law is a pure question of law. *See Fort Properties, Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1320 (Fed. Cir. 2012)*; In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008) (Section 101 is an "issue of law"). Patent eligibility under § 101 is a threshold legal issue that "may be, and frequently has been, resolved on a 12(b)(6) or (c) motion." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018). Invalidation of a patent under § 101 is therefore ripe for consideration at the pleading stage, and this District has granted similar motions where claims—such as those at issue in this case—may be decided on review of the claims and intrinsic evidence alone. *See Symbology Innovations, LLC v. Dexcom, Inc.*, No. 2:23-CV-00473-JRG, 2024 WL 3543409, at *14 (E.D. Tex. July 25, 2024) (dismissing under § 101 claims of asserted patents directed to the abstract idea of data recognition and retrieval using "no more than generic computer operations and barcode scanner functions that were well-known, routine, and conventional at the time of the invention."). Moreover, "[f]ailure to recite statutory subject matter is the sort of 'basic deficiency,' that can, and should, 'be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring); *see also OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1364–65 (Fed. Cir. 2015) (Mayer, J., concurring) ("Addressing 35 U.S.C. § 101 at the outset not only conserves scarce judicial resources and spares litigants the staggering costs associated with discovery and protracted claim construction litigation, it also works to stem the tide of vexatious suits brought by the owners of vague and overbroad business method patents.").

Patent eligibility under § 101 is assessed using the two-step framework put forth by the Supreme Court in *Alice Corp. Pty. v. CLS Bank Int'l.*, 573 U.S. 208, 217–18 (2014). The "Court must first determine whether the claims at issue are directed to a patent-ineligible concept," like an abstract idea. *Id.* In doing so, the court must distinguish between "ineligible 'abstract-idea-based solution[s] implemented with generic technical components in a conventional way' from the eligible 'technology-based solution' and 'software-based invention[] that improve[s] the performance of the computer system itself.'" *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1299 (Fed. Cir. 2016) (quoting *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1351 (Fed. Cir. 2016)).

Upon determining that the claims recite a patent-ineligible concept, the court must then "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217; *see also Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66 (2012). This step is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014) (quoting *Alice*, 134 S. Ct. at 2359).

### 1.    Claim Construction is Not a Prerequisite for Finding Patents Invalid Under § 101.

"Where it is clear that claim construction would not affect the issue of patent eligibility, there is no requirement that the court go through that exercise before addressing the eligibility issue." *Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols.*, No. 2:15-CV-1559-WCB, 2016 WL 2742379, at *6 (E.D. Tex. May 10, 2016) (Bryson, J.) (citing *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1274 (Fed. Cir. 2012)); *see also Symbology Innovations*, 2024 WL 3543409, at *2. Where the "'basic character of the claimed subject matter'

in dispute is clearly evident to the Court," no further construction of the claims is required. *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405, 410 (D.N.J. 2015), *aff'd*, 636 Fed. Appx. 1014 (Fed. Cir. 2016).  Accordingly, if the asserted patent claims are drawn to ineligible abstract ideas and there is no reasonable construction of a claim term which would provide otherwise, dismissal under § 101 is appropriate. *See Content Extraction & Transmission*, 776 F.3d at 1349 (finding "claim construction is not an inviolable prerequisite to a validity determination under § 101" where "even when construed in a manner most favorable to [patentee], none of [patentee's] claims amount to 'significantly more' than the abstract idea").  There is no plausible construction of any claim term for the Asserted Patents which would preclude a judgment on the pleadings and dismissal under § 101, and thus such findings prior to claim construction are warranted for this case.  *See id.*

Defendants disagree with any assertion by Amadora that the claims' term "independently of any processing of the transaction" requires construction prior to determining whether the claims are directed to patent eligible subject matter.  The transmission of information "independently of any processing of the transaction" does not alter the "'basic character of the claimed subject matter' in dispute" and therefore does not preclude the Court's review. *Wireless Media Innovations*, 100 F. Supp. at 410.  Moreover, Amadora's proposed construction of the term to mean "without reliance upon the processing of the transaction," contributes to the claims' abstract nature and fails to provide any "inventive concept" required to preclude the Court's invalidation of the Patents under § 101.  Whether the transmission of information occurs with-or-without reliance on the processing of the transaction does not alter the claims' abstract nature; in either situation the abstract idea remains the same and utilizes the same "well-understood, routine, [or] conventional activities previously known to the industry."  *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 773 (Fed. Cir. 2019).  Therefore, even if the Court were to adopt the construction proposed by Plaintiff Amadora, the asserted claims are still abstract and are ineligible for patent protection.

## 2.    Representative Claims of the Asserted Patents May Be Analyzed Under § 101.

Analysis under § 101 may be conducted using a representative claim where—as here—the claims of the Asserted Patents are "substantially similar and linked to the same abstract idea." *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).  "While '[t]he initial burden of persuasion rests on the defendant to identify a rationale for treating a given claim or claims as representative of other asserted claims,' that burden is neither permanent nor particularly onerous." *Symbology*, 2024 WL 3543409, at *5 (quoting *PPS Data, LLC v. Jack Henry & Assocs., Inc.*, 404 F. Supp. 3d 1021, 1030–32 (E.D. Tex. 2019)). Where the claims of the Asserted Patents each contain "the same essential elements" as the representative claim, use of a single representative claim is appropriate for the purposes of § 101. *Id*.

Amadora's asserted claims consist of claim 61 of the '270 patent, claims 1 and 2 of the '020 patent, and claims 35, 41, and 48 of the '429 patent.  *See* Dkt. 24 at Ex. E.  Independent claim 1 of the '020 patent and claim 35 of the '429 patent are each representative for their respective dependent claims (claim 2 of the '020 patent and claims 41 and 48 of the '429 patent).  Each of these representative independent claims are substantially similar to their dependent counterparts, and the additional limitations contained in the dependent claims are directed to the same abstract idea as the independent claim and add no additional subject matter to render the claims patent eligible. *See Content Extraction & Transmission*, 776 F.3d at 1348; *Symbology Innovations*, 2024 WL 3543409, at *3–5.  Dependent claim 2 of the '020 patent depends from representative independent claim 1 and includes the additional claim element "wherein the camera of the video recording device is located on the transaction terminal."  This narrower limitation, specifying that the camera is located "on the transaction terminal," fails to provide anything other than obvious placement of the generic "camera" and "video recording device" equipment of the independent

claim, and such insignificant pre- or post-solution activity adds no patentable subject matter to the claim. *See Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 82 (2012).

For the '429 patent, dependent claim 41 depends from independent representative claim 35 and adds the limitation of "a card reader, wherein the card reader obtains information regarding the account." Claim 41's additional limitation, however, suffers from the same results-oriented (and thus ineligible) claim language as claim 35, and adds only insignificant pre- or post-solution activity to the claim. *See id.* For example, "a card reader" is simply one of multiple generic components that may function as an "input device" in the independent claim, as the specification defines a "magnetic card reader" as "a magnetic card reader and/or magnetic strip card reader, for reading data from the magnetic strip located on credit cards, charge cards, debit cards and/or the currency or 'smart' cards." Ex. C at 23:7–10. This generic componentry operates in a conventional fashion where it "will read and enter the account number and/or information for processing." Ex. C at 45:63–64. Claim 48 also depends from claim 35 and includes the additional limitation "wherein the apparatus receives a transaction response message transmitted from the communication device, wherein the transaction response message contains information for authorizing, allowing, or disallowing, the transaction." Ex. C at claim 48. As with the other dependent claims, claim 48 is directed to the same abstract idea as the independent claim and includes only conventional pre- or post-solution activity. *See Mayo Collaborative Servs.*, 566 U.S. at 82. For example, independent claim 35 contains the same generic "receiver" componentry described in claim 48, and thus the latter claim adds only results-oriented functional language describing post-solution activity of the independent claim. *See id.*

C.    *Alice* **Step One:  The Asserted Patents Claim an Abstract Idea and Provide Nothing More.**

1.    **The Asserted Patents claim the abstract idea of "generating, processing, and transmitting information" for monitoring and surveilling financial transactions.**

9

The claims of Amadora's Asserted Patents are each directed to the well-established abstract idea of "gathering, processing, and transmitting information" for the surveillance of financial transactions.  *See iLife Techs., Inc. v. Nintendo of Am., Inc.*, 839 F. App'x 534, 536–37 (Fed. Cir. 2021) (finding the claims directed to the "routinely held" abstract idea of "gathering, processing, and transmitting information."); *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1356–58 (Fed. Cir. 2023) (finding the claims directed to an abstract concept where "[t]he claims are directed to a method of receiving, displaying, converting, storing, and transmitting digital video 'using result-based functional language.'"); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367–68 (Fed. Cir. 2015) (finding that a claim reciting a method of "storing, in a database, a profile keyed to a user identity and containing one or more user-selected categories to track transactions associated with said user identity" was directed to the abstract idea of tracking financial  transactions that consisted of nothing more than "generic computer elements" and did "not address problems unique to the Internet.").  For the reasons discussed in detail below, each of the claims of the Asserted Patents recite generic steps to gather, process, and transmit information, and apply these steps for surveillance of a financial transaction.  As an example of the claims' abstract nature, the claims use the same high-level functional language that describe methods typically conducted by a bank teller to verify a user's identity and prevent fraud.  Finally, there is no improvement claimed (or described in the specification) to save the claims from abstraction.  Given these facts, the Asserted Patents satisfy *Alice* step one and are directed to an abstract idea.

### a.    The gathering, processing, and transmitting of information has been well-established as an abstract idea.

Claims reciting the "gathering, processing, and transmitting" of information have been routinely held as abstract.  *See iLife Techs.*, 839 F. App'x at 536–37 (Fed. Cir. 2021) ("We have routinely held that claims directed to gathering and processing data are directed to an abstract

idea"); *In re Killian*, 45 F.4th 1373, 1380 (Fed. Cir. 2022) ("We have found similar claims pertaining to data gathering, analysis, and notification on generic computers to be directed to abstract ideas at *Alice/Mayo* step one."); *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1378 (Fed. Cir. 2024) ("We have explained that the steps of obtaining, manipulating, and displaying data, particularly when claimed at a high level of generality, are abstract concepts.").

The Federal Circuit's long-line of cases finding the gathering, processing, and transmitting of information abstract rests upon its belief that "[i]nformation as such is an intangible," and thus "collecting information, including when limited to particular content (which does not change its character as information)" is "within the realm of abstract ideas." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–54 (Fed. Cir. 2016). The Federal Circuit detailed the reasons why each of these steps are abstract in *Electric Power Group*. First, for the gathering steps, the Federal Circuit has consistently held that "collecting information, including when limited to particular content (which does not change its character as information)" is "within the realm of abstract ideas." *Id*. at 1353. Second, for processing, the Federal Circuit has held that "the analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category." *Id*. at 1354. Finally, for transmitting steps, it has been held that "merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis." *Id*.

Applying these established principles to the current case confirms that each and every claim limitation for each of the representative claims is directed to one of these three fundamentally abstract steps:

| '270 Patent Claim Limitations | Related Abstract Idea |
|---|---|
| 61.  An apparatus, comprising: | |
| a camera for obtaining a photograph or a picture of an individual involved in a transaction on an account; | Gathering Information |
| an input device for inputting or entering, or a receiver for receiving, information regarding the transaction; | Gathering Information |
| a processing device for processing the information regarding the transaction, wherein the processing device is adapted for generating a notification message containing information regarding the transaction; and | Processing Information |
| a transmitter for transmitting the notification message to a communication device associated with an individual account holder independently of any processing of the transaction by a transaction authorization processing computer, | Transmitting Information |
| wherein the transmitter or the apparatus is adapted to transmit the photograph or the picture to the communication device independently of any processing of the transaction by the transaction authorization processing computer. | Transmitting Information |

| '020 Patent Claim Limitations | Related Abstract Idea |
|---|---|
| 1.  An apparatus, comprising: | |
| a transaction terminal, further comprising: | |
| an input device or a receiver, wherein the input device inputs or the receiver receives information regarding an account and transaction information regarding a transaction on or involving the account; | Gathering Information |
| a camera or a video recording device, wherein the camera or the video recording device obtains or records a photograph or a video clip of an individual involved in the transaction; | Gathering Information |
| a processor, wherein the processor processes the transaction information; and | Processing Information |
| a computer, further comprising: | Processing Information |
| a database, wherein the database stores information regarding the transaction and the photograph or the video clip of the individual involved in the transaction, | Processing Information |
| wherein the information regarding the transaction and the photograph or the video clip of the individual involved in the transaction is transmitted to a communication device independently of any processing of the transaction by a transaction authorization processing computer. | Transmitting Information |

12

| '429 Patent Claim Limitations | Related Abstract Idea |
|---|---|
| 35.  An apparatus, comprising: | |
| a banking transaction terminal, wherein the banking transaction terminal further comprises: | |
| a user input device or a receiver, wherein the user input device inputs or the receiver receives information regarding an account and transaction information regarding a transaction on or involving the account; | Gathering Information |
| a camera or a video recording device, wherein the camera or the video recording device obtains or records a photograph or a video clip of an individual involved in the transaction, wherein the camera or the video recording device obtains the photograph or the video clip of the individual involved in the transaction during the transaction; and | Gathering Information |
| a processor, wherein the processor processes the transaction information; and | Processing Information |
| a central processing computer, wherein the central processing computer is a computer of or for a financial institution or any number of financial institutions, wherein the banking transaction terminal is linked to, or connected to, the central processing computer, and further wherein the central processing computer further comprises: | Processing Information |
| a database, wherein the database stores information regarding the transaction and the photograph or the video clip of the individual involved in the transaction; and | Processing Information |
| a display, wherein the display displays information or data to a user or an operator, | Transmitting Information |
| wherein the apparatus transmits a notification message to a communication device associated with an account holder of the account, wherein the notification message contains information for providing notification of the transaction, | Transmitting Information |
| and further wherein the central processing computer provides for a retrieval, by the user or the operator via the display, of the information regarding the transaction and the photograph or the video clip of the individual involved in the transaction. | Transmitting Information |

b.     **The Asserted Patents application of these gathering, processing, and transmitting steps for surveillance of financial transactions is an abstract idea.**

Application of the Amadora claims' steps of gathering, processing, and transmitting to monitor and surveil financial transactions does not change their abstract nature. Surveilling and monitoring of financial transactions is a routine and well-known method of organizing human behavior. *See Intellectual Ventures I*, 792 F.3d at 1367 (finding claims directed to the "tracking financial transactions to determine whether they exceed a pre-set spending limit" as "not meaningfully different from the ideas found to be abstract in other cases before the Supreme Court and our court involving methods of organizing human activity"); *Hawk Tech. Sys.*, 60 F.4th at 1356–58 (finding claims for a video surveillance system as "directed to a method of receiving, displaying, converting, storing, and transmitting digital video 'using result-based functional language'") (citing *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017). The same holds true in this case. Amadora's Asserted Patents "pertains to a transaction security apparatus and method and/or to a financial transaction" (*See* Ex. A at 1:15–16) wherein the claimed apparatus and methods "provid[e] financial transaction authorization, notification and/or security" (*See* Ex. A at 3:65–67), but their application does not render them any less abstract.

For example, in *Joao Control & Monitoring Systems v. Digital Playground, Inc*. No. 12-CV-6781, 2016 WL 5793745, *5–6 (S.D.N.Y. Sept. 30, 2016), the court found that similar patents by the same inventor as Amadora's patents (Raymond Joao) were invalid under § 101. In doing so, the court concluded the claims were "directed to the idea of remote surveillance, or the monitoring of property for the purpose of securing or controlling it by electronically transmitting data about it." *Id*. Finding the claims directed to a patent ineligible concept, the court explained that "the concepts of remote surveillance, remote control, and the recording and transmission of audio and video and other data are clearly 'longstanding commercial practice[s]'" and thus "[s]imply combining these abstract ideas does not create a non-abstract idea." *Id*. at *5 (citing

14

*Alice*, 573 U.S. at 220).  The same holds true for Amadora's Asserted Patents and their claims are likewise abstract.

>    **2.    The abstract idea of the Asserted Patents is nothing more than application of the same steps used by a bank teller to surveil financial transactions.**

Comparing the claims' abstract idea—gathering, processing, and transmitting information for the surveillance of financial transactions—to the processes carried out in person by bank tellers, verifies their abstract nature.  The Asserted Patents claim the process of (1) collecting information of the user completing the transaction; (2) processing and storing information related to the transaction and the account holder; and (3) notifying the account holder of any potential fraud.  *See* Ex. A at claim 61, Ex. B at claim 1, and Ex. C at claim 35.  Each of these three steps are routinely conducted by a bank teller when completing a user's transaction in person.

Patent claims similar to those of the Asserted Patents have been found invalid under §101 because the claimed process simply mimicked steps routinely conducted in person by a bank teller. *See Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*, 76 F.Supp.3d 513 (D. Del. 2014), *aff'd*, 803 F.3d 667 (Fed. Cir. 2015).  In fact, the patent claims declared to be invalid in that case had the same inventor, Raymond Joao, as those of the Asserted Patents.

The claims and specification in *Jack Henry* share substantial similarities with the claims at issue in this case.  The apparatus in *Jack Henry* was "[a] transaction security apparatus," whereas the Asserted Patents recite a "transaction terminal," "teller terminal," and "point-of-sale terminal." *See Jack Henry*, 76 F. Supp.3d at 521; *see e.g.*, Ex. B at claims 2, 3, and 11.  The descriptions included in the specifications also mirror one another:

| Specification Language in *Jack Henry* | Specification of the Asserted Patents |
|---|---|
| "**an apparatus and a method for providing financial transaction authorization, notification and/or security**, and, in particular, provides an apparatus and a method for providing financial transaction authorization, notification and/or security in conjunction with credit card, charge card, debit card, and/or currency or "smart" card use, savings and/or checking account activity and use and/or cellular telephone use" <br> *See Jack Henry*, 76 F. Supp.3d at 521 | "an apparatus and a method for providing financial transaction authorization, notification and/or security" (*See* Ex. A at 3:65–67) which is "utilized so as to provide authorization, notification and/or security in banking and related financial transactions involving checking accounts, savings accounts and/or automated teller machine (ATM) transactions." <br> Ex. A at 9:51–57. |

Defendants in *Jack Henry* asserted that the claimed monitoring of financial transactions for security purposes were the same conventional business practices carried out in person by a bank teller. *See Jack Henry*, 76 F. Supp.3d at 522. The court agreed, finding that the claims were directed to "a conventional business practice utilized by bankers or financial institutions in their dealings with individual account holders without the use of computers" and its findings are equally applicable in this case. *Id.* Each of the claim limitations of the Asserted Patents could be carried out by a bank-teller in person and are simply applications of conventional business practices to conventional computer components which gather, process, and transmit user information for financial security purposes. *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014) ("[R]ecitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible."); *Digital Playground*, 2016 WL 5793745, at *6 (finding the asserted patent "'at its core' [is] directed to the 'abstract idea of monitoring, i.e., surveillance,' which is 'a well-known concept that 'humans have always performed.'"") (citing *Joao Control & Monitoring Sys., LLC v. Telular Corp.*, 173 F. Supp. 3d 717, 726–27 (N.D. Ill. 2016)). For the same reasons that inventor Joao's prior patents have been found directed to an abstract idea, the same is true in the instant cases filed by Amadora.

16

### 3. The claims of the Asserted Patents contain only results-driven functional language that recite the steps for implementing the abstract idea.

As described above, the Asserted Patents recite the functional steps of (1) gathering account and user information, (2) processing and storing the captured information, and (3) later transmitting or displaying the information to an account holder. *See* Ex. A at claim 61, Ex. B at claim 1, and Ex. C at claim 35. Such "result-focused, functional character" is "a frequent feature of claims held ineligible under § 101." *Elec. Power Grp.*, 830 F.3d at 1356. The claims of the Asserted Patents simply recite "a desired function or outcome without providing any limiting detail that confines the claim to a particular solution to an identified problem," and are therefore abstract. *See Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016).

For example, the apparatus of claim 61 of the '270 patent recites various functional steps including "obtaining a photograph or a picture," "obtaining an audio clip," "inputting or entering…[or] receiving, information," "processing the information," "generating a notification message," "transmitting the notification message," and "transmit[ing] the photograph or the picture." *See* Ex. A at claim 61. Similarly, representative claim 1 of the '020 patent simply mirrors the functional language used in claim 61 of the '270 patent, simply adding a "video recording device" that obtains "a video clip of an individual involved in the transaction" and a "database" that "stores information regarding the transaction and the photograph or the video clip of the individual involved in the transaction." *See* Ex. B at claim 1. Likewise, representative claim 35 of the '429 patent, fares no better, containing only minor additions such as a database that "stores information regarding the transaction," and a central processing computer that "provides for retrieval" the information. *See* Ex. C at claim 35. The results-driven language of the claims of the Asserted Patents is so general that it fails to provide any technical solution that it solves, or non-conventional components that are utilized, rendering only high-level processes for carrying out an abstract idea. *See Elec. Power Grp.*, 830 F.3d at 1354.

Moreover, the claims of the Asserted Patents fail to provide the required details of *how* the results-orientated language of the claims is completed using anything other than conventional components known at the time.  *See Affinity Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d at 1258 ("There is nothing in claim 1 that is directed to *how* to implement out-of-region broadcasting on a cellular telephone. Rather, the claim is drawn to the idea itself."). As in *Ericsson Inc. v. TCL Communication Technology Holdings Ltd.*, 'the claims here do not "ha[ve] the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it.'" 955 F.3d 1317, 1328 (Fed. Cir. 2020) (citing *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018)).  The claims and specification of the Asserted Patents utilize only generic computer and electrical components used in a conventional fashion, omitting any detail as to how any processes or steps are carried out in a non-routine fashion.  *See infra* Sections IV.C.4 & IV.D.2.

### 4. The claims recite their abstract idea using only functional language and therefore provide no improvement to the specific means or technology.

For an otherwise abstract idea to be determined non-abstract at the *Alice* step one stage, the claims must "focus on a specific means or method that improves the relevant technology."  *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016).  No such improvement exists in the claims of the Asserted Patents.  The Asserted Patents simply refer to routine and conventional hardware such as a "camera or video recording device," "microphone or an audio device," "input device," "processing device," "display," "transmitter," and "receiver."  *See* Ex. A at claim 61, Ex. B at claim 1, and Ex. C at claim 35.  The organization of steps and manner of use for these conventional computer components also do not provide any improvement to the technology.  *See Elec. Power Grp.*, 830 F.3d at 1354.  The only purported advantage described by the Asserted Patents is that "there is no present apparatus or method by which to provide notification to an account owner at the time of the unauthorized transaction and/or account activity and/or shortly thereafter same."

Ex. C at 4:9-12.  However, this statement is incorrect.  As determined in *Jack Henry and Telular*—which each involved similar patent claims authored by the same inventor as in the Asserted Patents—notifying an account owner of potential fraud or conducting surveillance was a routine method manually conducted day-to-day by bank tellers or others in-person.  *See Jack Henry,* 76 F. Supp.3d at 522; *Telular Corp.*, 173 F. Supp. 3d at 727.  Instead of cameras, tellers visually inspected a user's face and identification cards, compared that information to the account information provided for the transaction, and would notify the account holder via telephone or email of any potential fraud.  *See Telular,* 173 F. Supp. 3d at 727 ("And although monitoring may have been done by the human eye before the invention of electricity, the general concept of keeping watch over property is timeless.").  Thus, the replacement of the teller's eyes and hands for cameras, computers, and electronic equipment of the claimed apparatus, is not sufficient to render Amadora's claims any less abstract. *See id.* at 727 ("The fact that the [asserted patents] purport to solve a problem by allowing individuals to monitor their property remotely through the use of a computer network does not make the patents non-abstract."); *see also Esignature Software, LLC v. Adobe Inc.,* No. 2023-1711, 2024 WL 3289488, at *3 (Fed. Cir. July 3, 2024) ("At bottom, Esignature simply emphasizes the *electronic* aspects of claim 1. But, at least here, this emphasis shows only that the longstanding business practice happens on a computer—which hardly solves the claim's 'do it on a computer' problem."); *Becton, Dickinson & Co. v. Baxter Int'l, Inc.*, No. 1–14–CV–222–LY, 2015 WL 5148850, at *5 (W.D. Tex. Aug. 3, 2015) ("The fact that [an invention] is 'remote' is of no added consequence to the abstract nature of the concept."); *Univ. of Fla. Research Found., Inc. v. General Electric, Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019).

**5.    The specification only describes generic computers used in conventional ways and thus does not cure the claims' abstract nature.**

The claims' high level of generality and results-orientated nature is not cured by the specification.  *See AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1378 (Fed. Cir.

2024) ("Finally, we consider the claims in light of the specification but avoid importing concepts from the specification into the claims."). For example, to achieve the "transmitting" function identified in each of the Asserted Patents, the specification cites to the use of "a wireless telephone line." Ex. A at 14:62–67. For the various processing steps, the specification states that "[t]he central processing computer 3 may utilize any of the widely known data processing and/or software routines, which are known to those skilled in that art, in order to process transaction requests and/or authorizations involving the use of the respective card(s)." Ex. A at 20:28–32 (emphasis added). Such processing uses only conventional hardware because the specification defines the claimed "central processing computer" as being "a mainframe computer, a mini-computer, a micro-computer, a server computer, such as those utilized in conjunction with on-line services and/or in a network environment, and/or any other suitable computer or computer system." Ex. A at 14:36–40. For the storage of information captured by the claimed apparatus, the specification cites the use of "a central processing unit or CPU" with "associated random access memory 3B (RAM) and read only memory 3C (ROM) devices." Ex. A at 16:45–53. For "obtaining a photograph, a picture, or a video clip" the specification describes the use of "a camera or a video recording device which can be used to take a picture, a photograph, or a video clip of an individual." Ex. A at 16:15–18. These types of equipment described in the specification are nothing more than generic computer components which do not cure the deficiencies found in the claims. *See In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611–14 (Fed. Cir. 2016).

In sum, the Asserted Patents are each directed to the well-established abstract idea of "gathering, processing, and transmitting information" using only high-level functional language that provides no improvement for the technology or the well-established practice of monitoring a financial transaction for fraud. The Asserted Patents are therefore abstract and contain ineligible subject matter under *Alice* step one.

### D.    *Alice* Step Two:  The Asserted Patents Do Not Recite Any Inventive Concept.

The Asserted Patents also fail under step two of *Alice*.  *Alice* step two considers whether the patent claim elements, individually or as an ordered combination, provide an "inventive concept." *Alice*, 573 U.S. at 221 (citing *Mayo*, 132 S. Ct. at 1297-98).  "A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]," and the Court looks to "whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217, 221.  The "additional elements," however, "cannot simply be well-understood, routine, [or] conventional activities previously known to the industry." *ChargePoint,* , 920 F.3d at 773.  For the reasons provided below, the claim elements of Amadora's Asserted Patents do not provide an inventive concept and therefore should be found invalid under § 101.

### 1.    The abstract idea claimed by the Asserted Patents does not provide any inventive concept.

The gathering, processing, and transmitting of information claimed in this case fail to provide an "inventive concept" for the same reasons as in *Electric Power Group, LLC*, where "merely selecting information, by content or source, for collection, analysis, and display does nothing significant to differentiate a process from ordinary mental processes" and "do not even require a new source or type of information, or new techniques for analyzing it." *Elec. Power Grp.*, 830 F.3d at 1355.  Here, the patents use generic components to collect the same information as a bank teller (*i.e.*, images of the person's face and the sound of their voice), processes this information in the same way that a bank teller would (*i.e.*, comparing it to a known image or memory of the account holder), and then transmits or notifies the user in a standard fashion (*i.e.*, calling the account holder's phone or sending them a message over the internet).  *See Jack Henry*, 76 F. Supp.3d at 521–23.  Accordingly, as in *Electric Power Group* and *Jack Henry*, the claims here "do not require an arguably inventive set of components or methods, such as measurement

devices or techniques, that would generate new data" nor do they "invoke any assertedly inventive programming." *Elec. Power Grp.*, 830 F.3d at 1355. Instead, they "[m]erely require[e] the selection and manipulation of information—to provide a "humanly comprehensible" amount of information useful for users" which "by itself does not transform the otherwise-abstract processes of information collection and analysis." *Id*.

### 2. The claimed abstract idea utilizes only conventional equipment in conventional ways.

There is also no inventive concept in *how* the claimed functions—which are tasks routinely conducted by a bank teller—is conducted. As described in Section IV.C above, the claimed apparatus and method uses only generic computer equipment and conventional steps and therefore fails to transform the abstract idea into a patent-eligible invention. *See Alice*, 573 U.S. at 223. Where the "claim 'does no more than require a generic computer to perform generic computer functions,' as here, the claims lack an inventive concept sufficient to demonstrate eligibility at step two." *See Ericsson*, 955 F.3d at 330–31 (citations omitted). The Asserted Patents contain no "additional features," rather, they simply recite well-known equipment such as a "microphone," "camera," "video recording device," "audio recording device," "input device," "processing device," "transmitter," "display," "computer of or for a financial institution" and "authorization processing computer." *See* Exs. A–C. Each of these components and their associated steps provide nothing beyond conventional use. Courts have routinely held that where "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information" there is no inventive concept. *Elec. Power Grp., LLC*, 830 F.3d at 1355 ("We have repeatedly held that such invocations of computers and networks that are not even arguably inventive are 'insufficient to pass the test of an inventive concept in the application' of an abstract idea."); *see In re Bd. of Trustees of Leland Stanford Junior Univ.*, 989 F.3d 1367, 1374 (Fed. Cir.

2021) ("[I]t is hard to imagine a patent claim that recites hardware limitations in more generic terms than...a 'computer' with a 'processor' and a 'memory'"); *Jack Henry*, 76 F. Supp. 3d at 523 (finding no inventive concept where "[t]he computer components are being employed for basic functions, including storage, transmitting and receiving information."). The claims of the Asserted Patents fall squarely into this category.

To the extent that any speed or efficiency conferred by conducting this long-standing practice of monitoring and surveilling financial transactions on a computer, such benefit is insufficient to render the claims patent eligible. *See Bancorp Servs., LLC v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) ("[T]he fact that the required calculations could be performed more efficiently via a computer does not materially alter the patent eligibility of the claimed subject matter."); *CLS Bank, Int'l v. Alice Corp.*, 717 F.3d 1269, 1286 (Fed. Cir. 2013) ("[S]imply appending generic computer functionality to lend speed or efficiency to the performance of an otherwise abstract concept does not meaningfully limit claim scope for purposes of patent eligibility." (citations omitted)). Therefore, the individual patent claim elements of the Asserted Patents fail provide any inventive concept in *how* the claimed abstract idea is carried out.

### 3. There is nothing "inventive" in how the claims' functional steps are ordered.

Moreover, the claims are ordered in a conventional way. The apparatus and methods recited in the claims follow the same order that would be conducted by a bank teller in-person: (1) collecting information of the user completing the transaction; (2) processing and storing information related to the transaction and the account holder; and (3) notifying the account holder of any potential fraud. *See* Ex. A at claim 61. As the Federal Circuit has consistently held, "merely reciting an abstract idea performed on a set of generic computer components, as [the claims] do [ ] here, would 'not contain an inventive concept.'" *Two-Way Media*, 874 F.3d at 1339 (quoting *Bascom Glob. Internet Servs.*, 827 F.3d at 1350); *see Hawk Tech. Sys.*, 60 F.4th at 1359. Therefore,

there is no ordered combination of patent claim elements which provides an inventive concept under *Alice* step two and the Asserted Patents should be found invalid under § 101.

## V.    CONCLUSION

For the reasons stated above, the claims of the Asserted Patents are invalid under 35 U.S.C. § 101. Therefore, judgment on the pleadings should be entered in favor of Defendants under Rule 12(c) and the Complaints should be dismissed with prejudice.


Dated: February 4, 2025                              Respectfully submitted,

                                                     */s/ Eric H. Findlay*
                                                     William M. Ragland, Jr. (GA Bar No. 591888)
                                                     **WOMBLE BOND DICKINSON (US) LLP**
                                                     Suite 1400
                                                     1331 Spring Street NW
                                                     Atlanta, Georgia 30309
                                                     Tel: (404) 888-7466
                                                     Email: bill.ragland@wbd-us.com


                                                     John H. Wright III (IL Bar No. 6339840)
                                                     **WOMBLE BOND DICKINSON (US) LLP**
                                                     555 Fayetteville Street, Ste 1100
                                                     Raleigh, NC 27601
                                                     Tel: (919) 755-2155
                                                     Email: John.Wright@wbd-us.com


                                                     Eric H. Findlay (TX Bar No. 00789886)
                                                     **FINDLAY CRAFT, P.C.**
                                                     7270 Crosswater Avenue, Suite B
                                                     Tyler, Texas 75703
                                                     Tel: (903) 534-1100
                                                     Fax: (903) 534-1137
                                                     Email: efindlay@findlaycraft.com


                                                     ***Attorneys for Defendants Bank of Texas, a Division of BOKF, N.A.; Texas Bank & Trust Company; and VeraBank, N.A.***

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

*/s/ Eric H. Findlay*
Eric H. Findlay

## CERTIFICATE OF COMPLIANCE WITH THE COURT'S 35 U.S.C. § 101 MOTION PRACTICE ORDER

_____ The parties agree that prior claim construction is not needed to inform the Court's analysis as to patentability.

__X__ The parties disagree on whether prior claim construction is not needed to inform the Court's analysis as to patentability.

*/s/ Eric H. Findlay*
Eric H. Findlay